## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LITTLE HOUSE RESORTS, LLC,

                     Plaintiff,

v.

VOYAGEURS NATIONAL PARK, *a unit of the National Park Service*; BRIAN HARMON,[1] *in his official capacity as the Acting Superintendent of the Voyageurs National Park*; DEPARTMENT OF THE INTERIOR; DOUGLAS BURGUM, *in his official capacity as Secretary of the Interior*; NATIONAL PARK SERVICE, *an agency of the Department of the Interior*; and JESSICA BOWRON, *in her official capacity as the Acting Director of the National Park Service*,

                     Defendant.

Civil No. 25-1374 (JRT/DTS)

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Gerald W. Von Korff and John C. Kolb, **RINKE NOONAN**, Post Office Box 1497, St. Cloud, MN 56302; Hannah J. Schacherl, **FAFINSKI MARK & JOHNSON, P.A.**, 11095 Viking Drive, Suite 420, Eden Prairie, MN 56303, for Plaintiff.

Trevor Brown, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendants.

---

[1] Brian Harmon is now the Acting Superintendent of the Voyageurs National Park. Pursuant to Federal Rule of Civil Procedure Rule 25(d), he is substituted as a Defendant, thereby replacing Robert DeGross.

Plaintiff Little House Resorts, LLC ("Little House") operates Pines of Kabetogama, a resort on the shores of Lake Kabetogama in northern Minnesota. Little House sells and operates private boat tours of Lake Kabetogama—which is part of Voyageurs National Park ("Voyageurs")—for its resort guests. Little House alleges that, prior to 2024, it did not need any sort of permit to provide these boat tours. But recently, Voyageurs informed Little House that it will now be "required to obtain Commercial Use Authorization for all water-based activities of its customers utilizing the surface of Lake Kabetogama."

Objecting to this new permitting requirement, Little House filed this action against numerous Defendants, including Voyageurs, the Department of the Interior, the National Park Service, and their respective leadership. Little House brings three claims under the Amended Complaint: "Unconstitutional Taking and Interference with Riparian Rights" (Count I); "Unlawful Rulemaking in Violation of the [Administrative Procedure Act]" (Count II); and "Arbitrary and Capricious Agency Decision" (Count III).

Defendants have moved to dismiss the Amended Complaint. Because sovereign immunity bars Count I and because there is no agency action ripe for review under Counts II or III, the Court will grant the motion and dismiss this matter without prejudice.

## BACKGROUND

### I.   FACTS

Congress established Voyageurs National Park in 1971 "to preserve, for the inspiration and enjoyment of present and future generations, the outstanding scenery,

geological conditions, and waterway system which constituted a part of the historic route of the Voyageurs who contributed significantly to the opening of the Northwestern United States."  (Am. Compl. ¶ 26, Sept. 4, 2025, Docket No. 9 (quoting 16 U.S.C. § 160).)  The State of Minnesota then transferred the relevant land to the federal government through legislation.  (*Id.* ¶ 30 (citing Minn. Stat. § 84B.03).)

Little House "owns and operates a historic resort, Pines of Kabetogama, on the shores of Lake Kabetogama in northern Minnesota near Voyageurs National Park."  (*Id.* ¶ 1.)  In 2021, "[Little House] and its owners acquired the resort," which was established in 1939, "and continued its improvement, relying upon the longstanding riparian rights and rights of access to the Lake."  (*Id.* ¶ 2.)

For the first many years of Voyageurs' existence, property on the shores of Lake Kabetogama, like Little House's, was not considered to be within Voyageurs' boundaries—as a result, "regulations applying to activities 'within Park bounds'" did not apply to resorts like Little House's.  (*Id.* ¶ 38.)  Little House purchased the Pines Resort in 2021, and "was . . . informed by the prior owner-operator that a Commercial Use Authorization was not required for the resort's operation and water-based recreational activities."  (*Id.* ¶ 42.)

In April 2023, "Voyageurs staff contacted Little House," and informed them that they "needed to obtain a Commercial Use Authorization as a formality for boat rentals to confirm the boats are registered and Little House had proper insurance."  (*Id.* ¶ 43.)

"Upon information and belief, Voyageurs staff consistently told other Lake Kabetogama riparian landowners that the Commercial Use Authorization was optional." (*Id.* ¶ 45.) "In or around December 2023, Voyageurs staff began communication with Lake Kabetogama riparian land owners that changes would be coming to Commercial Use Authorization requirements." (*Id.* ¶ 46.)

In July 2024, "Voyageurs staff held informational meetings regarding the new conditions to Commercial Use Authorizations and stated that Lake Kabetogama riparian landowners, including Little House, would be required to obtain a Commercial Use Authorization for all water-based activities of its customers utilizing the surface of Lake Kabetogama." (*Id.* ¶ 48.)  However, "Voyageurs does not require boat rental and other commercial operators on Ash River and Crane Lake, which directly connect with Lake Kabetogama, to obtain Commercial Use Authorizations for water-based activities and are considered 'out of Park bounds.'" (*Id.* ¶ 54.)

In 2024, the National Park Service announced new conditions applicable to all commercial use authorizations in the United States.  (Compl. ¶ 57.)  Voyageurs also issued new conditions specific to that park.  (Compl. ¶ 58.)  Little House alleges that the new conditions would:

- "[P]ermit[] the Voyageurs superintendent unlawfully and arbitrarily to unilaterally revoke or suspend a commercial use authorization to outside the Park resorts for any length of time without recourse or compensation and permits Defendants to change all stipulations and conditions without written notice, and without compensation." (*Id.* ¶ 59.)

- "[I]llegally and arbitrarily require[] businesses to set prices or rates to the satisfaction of the Voyageurs Superintendent." (*Id.* ¶ 60.)

- "[A]rbitrarily require annual reporting about visitor use statistics, and employee data, reportable injury data, and gross receipts earned from the entire operation . . . ." (*Id.* ¶ 61.)

- "[G]overns employees' sick leave stating that the holder must comply with all provisions of Executive Order 13706 of September 30, 2016 (Establishing Paid Sick Leave for Federal Contractors) and its implementing regulations . . . ." (*Id.* ¶ 63.)

The Amended Complaint set forth various other conditions that would apply to Little House. (*See id.* ¶¶ 59–66.)

Little House contends that its "business operations and income rel[y] on its right and ability to utilize its riparian property and leverage its riparian property to produce income." (*Id.* ¶ 69.)

## II.    PROCEDURAL BACKGROUND

Little House filed its initial Complaint on April 11, 2025, (Docket No. 1), and an Amended Complaint, which is now the operative pleading, on September 4, 2025. (Docket No. 9.)  Little House brings three causes of action against several Defendants: Voyageurs National Park; Brian Harmon, in his official capacity as the Acting Superintendent of Voyageurs National Park; the U.S. Department of the Interior; Douglas Burgum, in his official capacity as Secretary of the Interior; the National Park Service; and Jessica Bowron, in her official capacity as Acting Director of the National Park Service.

Count I alleges "Unconstitutional Taking and Interference with Riparian Rights." (Am. Compl. ¶¶ 77–98.)  Little House argues in Count I that "Congress did not authorize, nor did it intend to authorize, the taking of the right of landowners, persons and businesses located outside the Park" when it established Voyageurs National Park.  (*Id.* ¶ 78.)  Little House states that it "does not seek compensation," but rather "that there is no authorization for the taking, and that the Defendants' practices and purported policies need to be evaluated to avoid that unauthorized taking."  (*Id.* ¶ 80.)

Count II alleges "Unlawful Rulemaking in Violation of the [Administrative Procedure Act] Under the Guise of Agency Guidance."  (*Id.* ¶¶ 99–119.)  Little House argues in Count II that "[t]he Commercial Use Authorization conditions are requirements created and enforced by the National Park Service that have the effect of law but have not been promulgated by the rulemaking procedures as required by the [APA]."  (*Id.* ¶ 104.)

Count III alleges "Arbitrary and Capricious Agency Decision."  (*Id.* ¶¶ 120–143.) Little House argues that "Voyageurs' and the National Park Service's Commercial Use Authorization requirement and/or conditions . . . as applied to Lake Kabetogama, are *ad hoc* or *contra legem* agency decision-making." (*Id.* ¶ 124.)  Little House contends in Count III that "Voyageurs has modified its interpretation of 16 U.S.C. § 160a-1(a) to include Little House" but "has provided no explanation or rationale for its new interpretation."  (*Id.* ¶¶ 126–27.)

Defendants now move to dismiss the claims alleged in Plaintiff's Amended Complaint.  (Mot. Dismiss, Nov. 26, 2025, Docket No. 16.)  Defendants move to dismiss Count I under Fed. R. Civ. P. 12(b)(1), arguing that the claim is barred by sovereign immunity as to all Defendants.  Defendants move to dismiss Counts II and III under Rule 12(b)(6) for failure to state a claim.

**DISCUSSION**

**I.      STANDARD OF REVIEW**

**A.      Rule 12(b)(1)**

Rule 12(b)(1) motions "challenge[] the Court's subject matter jurisdiction and require[] the Court to examine whether it has authority to decide the claims."  *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). The party seeking to invoke a federal court's subject matter jurisdiction bears the burden of showing that the court has jurisdiction.  *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011).  The Court must dismiss an action if it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'"  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In deciding a facial attack, as Defendants bring here, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Id.* (citations omitted).  The Court, therefore, may also consider materials that are necessarily embraced by the pleadings.  *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation

-7-

marks omitted). The Court also accepts as true all facts alleged in the complaint, construing all reasonable inferences in the plaintiff's favor. *Id.*

### B.      Rule 12(b)(6)

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and

conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.   COUNT ONE: "UNCONSTITUTIONAL TAKING"

Defendants move to dismiss Count I—pled by Little House as "Unconstitutional Taking and Interference with Riparian Rights," (Am. Compl. ¶¶ 77–98)—under Rule 12(b)(1) for lack of subject matter jurisdiction.  Defendants urge that sovereign immunity bars Little House's takings claims absent an express waiver of sovereign immunity, and that Little House has not identified any waiver of sovereign immunity that would permit this claim to go forward against any Defendant.

The Court will grant Defendants' Motion to Dismiss as to Count I.  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  At no point in its briefing or at oral argument did Little House identify a waiver of sovereign immunity that would support the claims brought in Count I.  The only plausible waiver raised by the parties is for a takings claim under the Tucker Act, 28 U.S.C. § 1491, or the Little Tucker Act, 28 U.S.C. § 1346.  But the only permissible defendant under those statutes is the United States, which is not among the Defendants here.  *See Conner v. West*, 56 F. App'x 229, 231 (6th Cir. 2003) (noting that "the Tucker Act or even the Little Tucker Act . . . permits suit only against the United States, not its agencies").  Moreover, despite referencing "Taking" in its title for Count I, Little House confusingly contends that it "does not seek compensation," and that "the appropriate remedy is equitable relief

under the Administrative Procedure Act, not a damages action under the Tucker Act."
(Pl.'s Mem. Opp'n Mot. Dismiss at 26, Dec. 23, 2025, Docket No. 23.)

For these reasons, the Court will construe Count I as a takings claim, and grant Defendants' motion to dismiss for lack of subject matter jurisdiction as to Count I.

### III.    COUNTS TWO AND THREE: ADMINISTRATIVE PROCEDURE ACT

In Counts II and III, Little House brings claims under the Administrative Procedure Act (APA), challenging the alleged impending imposition of new Commercial Use restrictions on Little House's commercial use of Lake Kabetogama.  Count II is framed as a claim of "Unlawful Rulemaking in Violation of the APA Under the Guise of Agency Guidance," and Count III is framed as "Arbitrary and Capricious Agency Decision."  (Am. Compl. ¶¶ 99–143.)  Defendants seek dismissal of Counts II and III for failure to state a claim.

The APA gives this Court jurisdiction to review the lawfulness of final agency actions. *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. United States Corps of Eng'rs*, 888 F.3d 906, 914–15 (8th Cir. 2018) (quoting 5 U.S.C. § 704).  There are two hallmarks of APA finality. *Id.* at 915.  "First, the action must mark the 'consummation of the agency's decisionmaking process." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). "Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (internal quotation marks omitted).  "To constitute a final agency action, the agency's action must have inflicted 'an actual, concrete injury' upon the party seeking judicial review." *Id.* (citation omitted).

-10-

Little House argues that Defendants' "Commercial Use Authorization scheme," is a final agency action, ripe for APA review.  (Am. Compl. ¶ 106.)  Little House claims that the Defendants' actions are "akin to legislative rulemaking" and will ultimately "result in action taken against the party alleged to be operating a commercial enterprise without authorization."  (*Id*.)  The "policy" Little House challenges seems to include multiple components: (1) the National Park Service's issuance of new conditions that apply to all Commercial Use Authorizations nationwide (*id*. ¶ 57); (2) Voyageurs' "new, additional conditions specific to . . . Voyageurs National Park," (*id*. ¶ 58); and (3) "[I]nformational meetings" held by Voyageurs staff "regarding the new conditions to Commercial Use Authorizations" in which Little House was informed that it stated that "would be required to obtain a Commercial Use Authorization for all water-based activities of its customers utilizing the surface of Lake Kabetogama," (*id*. ¶¶ 46–48, 50).

For its claims to be ripe for review under the APA, Little House must allege the existence of an agency action that is the consummation of an agency decision-making process.  But it is difficult to identify from Little House's Amended Complaint precisely what action is being challenged, and which agency is alleged to have taken that action.  On one hand, Little House often appears to challenge a unilateral policy shift undertaken by Voyageurs and its superintendent.[2]  For example, Little House alleges that, in 2023,

---

[2] Little House also does not meaningfully respond to Defendants' position that Voyageurs National Park is not an "agency" for the purposes of APA review.

"Voyageurs staff began communicating . . . that changes would be coming to Commercial Use Authorization requirements.  It appears that **these policy changes were conducted internally** without public notice or comment."  (*Id*. ¶ 46 (emphasis added).)  Little House also raises concerns regarding Voyageurs' different treatment of similarly situated businesses, such as that "Voyageurs staff consistently told other Lake Kabetogama riparian landowners the Commercial Use Authorization was optional," while informing Little House that such authorization was required.  (*Id*. ¶ 45.)  These allegations seem to indicate that Little House's APA challenge is to a single national park's (Voyageurs') interpretation and application of federal law.

But on the other hand, Little House also appears to take issue with "new, general conditions for all commercial use authorizations" issued in 2024 by the National Park Service, not by Voyageurs.  (*See Id*. ¶ 59.)  Little House alleges that "[t]he policies described in this Complaint are the result of arbitrary and capricious decision making rushed at the end of the prior administration to confer unwarranted and unlawful authority on Park staff to control private businesses outside the park," (*id*. ¶ 53), "in a manner that the new administration would be unlikely to approve," (*id.* ¶ 113).

At bottom, neither Little House's sweeping and conclusory assertions related to national policy, nor their allegations related to Voyageurs' decisions as an individual park, sufficiently allege an agency action that is the consummation of any decision-making

process.[3] Because Little House is inconsistent in identifying both what policy they seek to challenge, and which agency is responsible for that policy, the Court concludes that Little House has failed to state a plausible APA claim.

As for the second aspect of "finality" under the APA, the Court concludes that Little House fails to allege that any of its rights or obligations have been determined by, or that adverse legal consequences will flow, from any alleged action by any Defendant.  Nothing in the Amended Complaint would support the finding that Defendants' alleged policies have harmed Little House in any concrete way to this point, nor is it clear that Little House would be harmed even if it were required to obtain a Commercial Use Authorization.  The Court acknowledges that even the threat of legal consequences can support a ripe APA claim.  *See Sackett v. E.P.A.*, 566 U.S. 120, 126 (2012) (finding a final agency action where compliance order directed plaintiff to alter their property).  But Little House has not identified a discrete action analogous to the compliance order in *Sackett* that imposes obligations or creates adverse legal consequences.

An agency action need not be in writing to be final and subject to judicial review. *E.g.*, *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015).  Accordingly, the fact that the alleged policy changes in this case seem to have been communicated to Little House primarily through unwritten channels (like informational meetings) is not, standing alone,

---

[3] The Department of the Interior is also named as a Defendant, although none of the Amended Complaint's allegations seem to allege any unlawful action by that Department or Secretary Burgum.

sufficient to defeat Little House's claims.  But Little House's generalized allegations of an unlawful policy enacted by various Defendants, and the threat of potential "action taken" against it, are too speculative at this time to support a claim under the APA.  (*See* Am. Compl. ¶ 106.)  The Court will therefore grant Defendants' motion to dismiss, albeit without prejudice.

## CONCLUSION

The Court construes Count I of Little House's Amended Complaint as a takings claim and concludes that it is barred by sovereign immunity.  The Court further concludes that Counts II and III, which are brought under the Administrative Procedure Act, fail to plausibly allege a final agency action by any Defendant.  Counts II and III therefore must be dismissed.  Accordingly, the Court will dismiss Little House's Amended Complaint but will do so without prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Docket No. [16]) is **GRANTED** as follows:

1. Count I of Little House's Amended Complaint (Docket No. [9]) is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

2. Counts II and III of Little House's Amended Complaint (Docket No. [9]) are **DISMISSED without prejudice** for failure to state a claim.

3. This matter shall be closed.

-15-

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  July 15, 2026                                  _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                  JOHN R. TUNHEIM
                                                       United States District Judge